NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREA ROUSE<br><br>Plaintiff,<br><br>v.<br><br>HUDSON COUNTY DEPARTMENT OF FAMILY SERVICES and HANY HANNA<br><br>Defendants. | Civil Action No.: 15-1511 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants' motion for summary judgment ("Motion"). (ECF No. 66). Defendant Hany Hanna is represented separately in his individual capacity and has filed a "cross-motion" for summary judgment relying on the points made in the Motion. (ECF No. 68). Plaintiff Andrea Rouse has filed an opposition, (ECF No. 69), and Defendants have filed a reply, (ECF No. 73). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' motions.

### I. BACKGROUND[1]

Plaintiff is a resident of Jersey City, New Jersey who received welfare benefits from May

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1, (ECF No. 66-7 at 5–9, Defendants' Rule 56.1 Statement of Material Facts ("Def. 56.1"); ECF No. 69 at 7–11, Plaintiff's Statement of Material Facts ("Pl. 56.1")), as well as from Plaintiff's Complaint ("Compl."), (ECF No. 1). To the extent that Plaintiff admits to any material facts as stated by Defendant, the Court will cite only to "Def. 56.1" and the relevant paragraph numbers. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of fact." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, No. Civ. 03-2854GEB, 2005 WL 3077915, at *2 (D.N.J. Nov. 15, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

of 2008 through August of 2012. (Def. 56.1 ¶ 1). Plaintiff complied with all the requirements of a benefits recipient during that time period. (Pl. 56.1 ¶ 2). Defendant Hanna has been a Welfare Investigator for over ten years with the Hudson County Division of Social Services Fraud, which is housed within the Hudson County Department of Family Services ("DFS"). (Def. 56.1 ¶ 4; Pl. 56.1 ¶ 7). Defendant Hanna's job responsibility is to verify an applicant's household residency and income. (Def. 56.1 ¶ 5).

In March of 2013, Plaintiff's welfare case was referred to Defendant Hanna by Denise Scirghio, an administrator within DFS. (Def. 56.1 ¶ 3). Ms. Scirghio had received the case from the Redetermination Department of Welfare. (Def. 56.1 ¶ 3). The parties dispute why DFS opened a case against Plaintiff and why Defendant Hanna was assigned to it.

According to Plaintiff, DFS began looking into her receipt of welfare after she filed a criminal complaint against a DFS caseworker, Arthur Parker, after he intentionally slammed a large steel door on her. (Pl. 56.1 ¶¶ 8–9, 13–15). Defendants, on the other hand, claim that DFS opened its investigation to figure out how Plaintiff could afford a rent of $900 per month "when her monthly income was far less than that." (Def. 56.1 ¶ 7). Defendants state that Defendant Hanna did not know that Plaintiff had filed a complaint regarding the alleged incident with Mr. Parker, nor did Defendant Hanna and Mr. Parker know each other well or discuss Plaintiff. (Def. 56.1 ¶¶ 23–24).

The case was assigned to the Welfare Fraud Unit within DFS because Plaintiff failed to respond to requests for documentation proving her recent income. (Def. 56.1 ¶¶ 9–10). Plaintiff disputes both of these contentions, as she believes that she could not have responded to DFS' requests because she was banned from the premises, and the income that DFS could not verify was income earned two years prior to the Welfare Fraud Unit's assignation of the case and one year

after Plaintiff stopped receiving welfare benefits. (ECF No. 69 at 12–13). As to the assignment of the case to Defendant Hanna, Defendants assert that "the method for assignment is random[, and the files] . . . are simply distributed like a deck of cards to different investigators." (Def. 56.1 ¶ 3). The investigators do not know who they will be investigating until they receive the file. (Def. 56.1 ¶ 3). Plaintiff indicates that Ms. Schirghio referred the case to Defendant Hanna directly, rather than randomly. (Pl. 56.1 ¶ 12).

Once assigned the case, Defendant Hanna twice attempted to contact Plaintiff to obtain certain documents. (Def. 56.1 ¶ 6). Plaintiff either does not recall being contacted, or, in the alternative, challenges the fact that Defendant Hanna ever tried to obtain those documents. (ECF No. 69 at 12). Plaintiff, however, received notice that she was to meet with a welfare investigator and provide certain documents. (Def. 56.1 ¶ 14). Plaintiff did not go to that meeting or otherwise contact the Hudson County Board of Social Services. (Def. 56.1 ¶ 15).

Defendant Hanna's investigation determined that Ms. Rouse's household included her ex-husband, Garrie Baldwin, who was also the father of their child. (Def. 56.1 ¶ 8). However, Defendants do not dispute that Plaintiff and Mr. Baldwin were separated and that Ms. Rouse had a restraining order against Mr. Baldwin as a result of domestic violence accusations. (Pl. 56.1 ¶¶ 3–5). Furthermore, Plaintiff does not believe the Lexis-Nexis documents obtained during the course of Defendant Hanna's investigation showed that Mr. Baldwin was a member of Plaintiff's household during the time period at issue. (ECF No. 69 at 12). Plaintiff generally disputes that the documents collected by Defendant Hanna establish that Mr. Baldwin was a resident of Plaintiff's household during the necessary time period. (Pl. 56.1 ¶¶ 27–31).

Plaintiff contends that Defendant Hanna "illegally obtained employment records for Ms. Rouse's husband, Mr. Baldwin, after being informed that a release form was required by falsely

3

stating that Garrie Baldwin had applied for public assistance." (Pl. 56.1 ¶ 16). Defendant contends that a Lexis-Nexis search is standard protocol and that this case included the same fact-finding techniques as any other, namely field research, information from the Motor Vehicles Commission, Post Office inquiries, and wage and address verification from employers. (Def. 56.1 ¶ 16). Plaintiff believes that some of these tactics were used to verify information about Mr. Baldwin without cause. (Pl. 56.1 ¶ 18). For example, Plaintiff believes that Defendant Hanna impersonated Mr. Baldwin by submitting a letter applying for welfare benefits as Mr. Baldwin, and by requesting Mr. Baldwin's financial information with a forged signature. (Pl. 56.1 ¶ 20). Plaintiff also asserts that Defendant Hanna "illegally" obtained Plaintiff's daughter's school records. (Pl. 56.1 ¶ 22).

According to DFS standards, once an investigator like Defendant Hanna completes the investigation, the file is placed in a stack for review by an assistant Hudson County prosecutor. (Def. 56.1 ¶ 18). In this case, assistant prosecutor John Wojtal reviewed the file and decided to proceed with the case. (Def. 56.1 ¶ 19). Plaintiff believes that "[a] senior DFS investigator endorsed" Defendant Hanna's report and recommended the case to the prosecutor for criminal proceedings. (Pl. 56.1 ¶ 25). Assistant prosecutor Wojtal presented Plaintiff's case to a grand jury, which indicted Plaintiff. (Def. 56. 1 ¶¶ 20–21). Assistant prosecutor Wojtal then dismissed the case on June 11, 2014. (Def. 56.1 ¶ 22). Plaintiff contends that the dismissal occurred once her counsel brought Defendant Hanna's "fraudulent reporting" to the prosecutor's attention. (ECF No. 69 at 14). Plaintiff was never arrested, but did receive a notice to go to court, where she appeared, was arraigned, and then released on her own recognizance. (Def. 56.1 ¶ 26).

Plaintiff subsequently filed her Complaint, alleging violations of her civil rights under 42 U.S.C § 1983, false arrest, malicious prosecution, professional misconduct, intentional infliction of emotional distress, and grossly negligent supervision and retention. (Compl. ¶¶ 30–76).

Plaintiff also seeks punitive damages. (Compl. ¶¶ 76–80). The New Jersey Department of Health, the New Jersey Department of Human Services, and the Hudson County Prosecutor's Office were named defendants in the Complaint but the claims against them were dismissed by this Court on October 13, 2015. (ECF No. 21). Defendants now seek summary judgment on all claims against them.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding disputed issues of material fact, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

Local Civil Rule 56.1 provides that, "[o]n motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." The opponent of summary judgment is required to furnish a responsive

statement of material facts stating each material fact in dispute and "citing to the affidavits and other documents submitted in connection with motion." *Id.* Where a statement of material facts does not include record citations for the assertions therein, the Court may disregard those assertions. *Kaplan v. Greenpoint Global*, No. 11-4854, 2014 WL 4793024, at *1 n.1 (D.N.J. Sept. 25, 2014). "'Judges are not like pigs, hunting for truffles buried in' the record," and the parties bear the responsibility of citing to the record to point the Court to the facts that support their argument. *U.S. v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) (quoting *Doebler's Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006)).

### III. ANALYSIS

Plaintiff's statement of material facts and response to Defendants' statement of material facts are often devoid of citations to the record. The assertions in Plaintiff's statement of material facts that are devoid of factual support cannot factor into the Court's summary judgment analysis. *Kaplan*, 2014 WL 4793024, at *1 n.1.

Of the statements of material fact critical to Plaintiff's case, the Court finds the following lacking in factual support:

- Plaintiff's statement that Defendant Hanna "would have seen" that Plaintiff's "initial address" was a women's shelter is unsupported and speculative. (Pl. 56.1 ¶ 7)

- Plaintiff's statement that DFS failed "to exercise due diligence in accurately recording Ms. Rouse's change in unemployment benefits" as a reason for DFS's investigation into and mismanagement of Plaintiff's welfare case is unsupported. (Pl. 56.1 ¶ 8).

- The portion of the deposition that Plaintiff cites to as support for the fact that Plaintiff was injured when Mr. Parker, a DFS caseworker, slammed "a large steel door on or about her torso," (Pl. 56.1 ¶ 8), is a portion of the deposition in which Mr. Parker explicitly denies

6

any such incident. (ECF No. 69-3 at 53–55). Plaintiff does not cite to another portion of the record to show that this incident actually occurred.

- Plaintiff's assertion that her criminal complaints against agency workers like Mr. Parker "enraged them" is unsupported. (Pl. 56.1 ¶ 9).

- Plaintiff's contention that she has not filed for welfare benefits since May 21, 2012 is unsupported. (Pl. 56.1 ¶ 10).

- Plaintiff's assertion that Defendants have not provided an answer as to why DFS was investigating Plaintiff's welfare benefits is unsupported and is in fact contradicted by Defendants' claim that they began investigating her file when they noticed a discrepancy between her ability to afford her monthly rent and her monthly income. (*Compare* Pl. 56.1 ¶ 13 *with* Def. 56.1 ¶ 7).

- Plaintiff's assertion that "[n]o Defendants or witnesses, when confronted, have properly explained how and why an investigation was initiated," is unsupported. (Pl. 56.1 ¶ 14).

- Plaintiff's assertion that "[f]acts lay out a strong contention that this case was started only as a retaliatory measure against Ms. Rouse for filing criminal complaints against DFS and its . . . employees and agents," is unsupported. (Pl. 56.1 ¶ 15).

- Plaintiff's statement that Defendant Hanna "illegally obtained employment records for" Mr. Baldwin is unsupported. (Pl. 56.1 ¶ 16).

- The portion of the deposition of Defendant Hanna that Plaintiff cites to as support for her contention that Defendant Hanna verified the employment and income of Mr. Baldwin without cause, (Pl. 56.1 ¶ 18), does not corroborate that claim. The portions of the deposition show that Defendant Hanna attempted to explain that he was looking into Mr. Baldwin's employment and income because they believed him to be a member of

- Plaintiff's household and that such an inquiry was required as part of the investigation. (ECF No. 69-3 at 24–25).

- Plaintiff cites to the same portions of Defendant Hanna's deposition as support for her claim that Defendant Hanna "made misrepresentations to the Jersey City Board of Education in order to obtain employment and salary information for Mr. Baldwin." (Pl. 56.1 ¶ 19). As stated above, those deposition extracts do not support such a contention.

- Plaintiff cites to the same portions of Defendant Hanna's deposition as support for her claim that Defendant Hanna "made misrepresentations to the Jersey City Municipal Employees Department of Personnel in order to obtain employment and salary information for Mr. Baldwin." (Pl. 56.1 ¶ 21). As stated above, those deposition extracts do not support such a contention.

- Plaintiff's claim that Defendant Hannah "illegally obtained education recorders [*sic*] for Ms. Rouse's daughter," is unsupported. (Pl. 56.1 ¶ 22).

- Plaintiff's claim that she filed a complaint against Defendant Hanna and that Defendant Hanna was served with that complaint is unsupported. (Pl. 56.1 ¶ 23).

- Plaintiff's claim that DFS allowed Defendant Hanna to continue investigating Plaintiff despite being a defendant in Plaintiff's criminal case against him is unsupported. (Pl. 56.1 ¶ 24).

- Plaintiff's contention that a "senior DFS investigator endorsed Hanna's reports and allowed the case to be recommended to the Prosecutor for criminal proceedings," (Pl. 56.1 ¶ 25), mischaracterizes the deposition testimony it cites, as Defendant Hanna's cited deposition excerpts actually state that he submitted a report to his supervisor without any recommendation regarding prosecution, (ECF No. 69-3 at 28). Those cited deposition

excerpts do not discuss the role of the supervisor, so that contention is unsupported.

- Plaintiff's claim that "[t]he reports Hanna collected did not indicate Garrie Baldwin's addresses from 2008 through 2012 as there is a severe lack of timestamps," is unsupported. (Pl. 56.1 ¶ 26).

- The salary verification form that Plaintiff contends shows that Mr. Baldwin's last known address was 104 Belmont Avenue, Jersey City, New Jersey in fact lists a different address as Mr. Baldwin's last known address. (Pl. 56.1 ¶ 29; ECF No. 69-2 at 2).

- Plaintiff relies on her Exhibit B for her assertion that Defendant Hanna "did not verify if Garrie Baldwin was a resident of any of those addresses," yet Exhibit B is the Lexis Nexis Report containing the past known addresses of both Mr. Baldwin and Plaintiff and cannot on its own show what Defendant Hanna did or did not verify. (Pl. 56.1 ¶ 30; ECF No. 69-2 at 4–55).

- The portions of Defendant Hanna's deposition cited as support for Plaintiff's proposition that Defendant Hanna "made a conclusion that Garrie Baldwin lived with Andrea Rouse from the period of 2008 through 2012 without any evidence to support his conclusion," in fact indicate only that Defendant Hanna had evidence to conclude that Mr. Baldwin and Plaintiff lived together at their Danforth Avenue address. (Pl. 56.1 ¶ 31; ECF No. 69-3 at 21, 23).

- The portions of Defendant Hanna's deposition cited as support for Plaintiff's contention that "[i]t is a policy and procedure of DFS to accept their Welfare Investigator's reports without further verification to the factual findings included in the report," is a mischaracterization of Defendant Hanna's testimony in the cited excerpts, as those excerpts state only that Defendant Hanna submitted his report to his supervisor. (Pl. 56.1 ¶ 32; ECF

No. 69-3 at 28).

- Plaintiff's statement that "[d]ue to Hany Hanna's extensive experience as a Welfare Investigator, Hanna understood that there would be a great likelihood that his intentionally misleading report would result in the Hudson County Division of Social Services Fraud Unit to recommend Andrea Rouse's case to a prosecutor leading to criminal charges filed against her," is both unsupported and conclusory. (Pl. 56.1 ¶ 34).

- Plaintiff's statement that "[b]ased on Hany Hanna's intentionally misleading report, the Hudson County Prosecutor began grand jury proceedings against Ms. Rouse," is unsupported. (Pl. 56.1 ¶ 35).

- Plaintiff's statement that "[d]uring the grand jury proceedings Hanna and the Prosecutor withheld exculpatory testimony and misrepresented the facts of the case to the grand jury in order to secure an indictment against Ms. Rouse," is unsupported. (Pl. 56.1 ¶ 36).

- Plaintiff's statement that she suffered a violation of her state and federal constitutional rights, a loss of physical liberty, pain and suffering, and emotional trauma as a direct and proximate result of the allegedly illegal acts of the Defendants is legal argument that does not belong in a statement of material facts and must be ignored. (Pl. 56.1 ¶ 38).

Thus, of the thirty-eight paragraphs contained in Plaintiff's 56.1 statement, twenty-four are either unsupported or cannot be relied upon by the Court as part of its summary judgment analysis. Of the remaining statements of material fact, six provide background information on the relationship between Plaintiff and Mr. Baldwin, (Pl. 56.1 ¶¶ 1–6), and one has to do with Defendant Hanna's experience as a welfare investigator, (Pl. 56.1 ¶ 33). Some of the remaining statements concern the date that Ms. Rouse last received a welfare payment, (Pl. 56.1 ¶ 11), the internal process by which Defendant Hanna was assigned this case, (Pl. 56.1 ¶ 12), the DFS's policy to use

Lexis-Nexis to verify addresses, (Pl. 56.1 ¶ 17), and the indictment of Plaintiff that resulted from the DFS investigation, (Pl. 56.1 ¶ 37).

That leaves three statements of fact that pertain to plausible misconduct by Defendants. Two statements indicate that Defendant Hanna's investigation contained information showing that Mr. Baldwin only lived with Plaintiff after she stopped receiving welfare benefits. (Pl. 56.1 ¶¶ 27–28). However, this is not the case. By Plaintiff's own admission, she received welfare benefits from May 2008 through August or November of 2012. (Pl. 56.1 ¶¶ 1, 11). The Lexis-Nexis Report that Defendant Hanna created shows that Plaintiff and Mr. Baldwin at least lived together in Hackensack in December of 2008 and in Jersey City in July of 2011, (ECF No. 69-2 at 27–28).

Plaintiff's final contention is that Defendant Hanna "submitted a letter impersonating Mr. Baldwin stating that he was applying for welfare benefits and requested Mr. Baldwin's financial information, including W-2s from 2008 through 2013 with Mr. Baldwin's signature forged by Mr. Hanna." (Pl. 56.1 ¶ 20). This fact is based on Plaintiff's own testimony, (ECF No. 69-3 at 64); however, this testimony was not elicited in response to a document in evidence and is not grounded in any other evidence produced to this Court. "[A] plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment." *Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002).

Plaintiff has thus set forth no material facts on which her claims for violations of her civil rights under 42 U.S.C § 1983, false arrest, malicious prosecution, professional misconduct, intentional infliction of emotional distress, and grossly negligent supervision and retention can be based. As a result, Defendants' motions for summary judgment must be granted. *Clark v. Acme Mkts., Inc.*, No. 11-2812, 2014 WL 714898, at *4 (D.N.J. Feb. 24, 2014) ("Because [the plaintiff] has not produced evidence to set forth a prima facie case . . . , no material fact exists for trial . . . ,

and summary judgment must be granted.").

IV. **CONCLUSION**

For the aforementioned reasons, the Court grants Defendants' motions for summary judgment. An appropriate Order accompanies this Opinion.

DATED: May 3rd, 2019

							/s/ Jose L. Linares
							HON. JOSE L. LINARES
							Chief Judge, United States District Court